**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 24-cv-20525-ALTMAN/Sanchez**

**MARIA TABRAUE,** *et al.*,

    *Plaintiffs*,

v.

**SCOTTSDALE INSURANCE COMPANY**,

    *Defendant*.

_____/

**ORDER DENYING MOTION TO REMAND**

The Plaintiffs have filed a Motion to Remand [ECF No. 14]—which, after careful review, we now **DENY**.[1]

**THE FACTS**

On November 14, 2023, our Plaintiffs, Maria and Mario Tabraue, sued our Defendant, Scottsdale Insurance Company ("Scottsdale") in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, asserting one count of breach of contract. *See* Complaint [ECF No. 1-2] at 1–10. The Plaintiffs allege that they "purchased from [the] Defendant and maintained in full force and effect, by and through the payments of premiums, a certain homeowner's insurance policy[.]" *Id.* ¶ 4. That policy provided insurance coverage for the Plaintiffs' property in Miami. *See id.* ¶ 6. "On or about January 1, 2023," the Plaintiffs claim that "a roof leak caused a covered loss and substantial damage to the [Plaintiffs'] property which was covered under the policy of insurance issued

---

[1] On March 22, 2024, the Defendant filed its Response in Opposition to the Plaintiffs' Motion to Remand (the "Response") [ECF No. 17]. The Plaintiffs have not yet filed a reply in support of their Motion to Remand. *See generally* Docket. But, since the Defendant has clearly met its burden of showing that the amount in controversy exceeds $75,000, we needn't wait for a reply to adjudicate the Plaintiffs' Motion to Remand.

by the Defendant which was at the time of the loss in full force and effect[.]" *Id.* ¶ 8. But, according to the Plaintiffs, Scottsdale "has refused and continues to refuse to pay the Plaintiffs' claim," even though the Plaintiffs "timely notified the Defendant of the Loss and . . . otherwise performed all conditions precedent to recover under the Policy and under the applicable Florida Statutes." *Id.* ¶¶ 9–10. The Plaintiffs therefore argue that Scottsdale breached the contract by "fail[ing] to pay the Policy benefits owed to the Plaintiffs under the terms of the Policy." *Id.* ¶ 12.

After being served on January 12, 2024, *see* Notice of Service of Process [ECF No. 1-2] at 4, Scottsdale removed this case to federal court under the provisions of 28 U.S.C. §§ 1332, 1441, and 1446, *see generally* Notice of Removal [ECF No. 1]. Scottsdale tells us that "[j]urisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because the controversy exceeds the sum or value of $75,000, exclusive of interest and costs and is between citizens of different states." *Id.* ¶ 7. In particular, the Defendants note that the Plaintiffs "submitted a 'rebuild' estimate from MC Enterprises of South Florida, Inc. for replacement cost totaling $75,184.87." *Id.* ¶ 13. The Plaintiffs "also submitted an estimate for mold testing from United Mold Inspection for $1,650.00," "an estimate for mold remediation from Titan Restoration, Inc. for $7,156.36," "an estimate for water mitigation from Titan Restoration, Inc. for $16,053.36," and "a supplemental estimate for water mitigation from Titan Restoration, Inc. for $6,417.43." *Id.* ¶¶ 14–17. The Plaintiffs now move to remand the case back to state court. *See generally* Motion to Remand. They also seek an award of "attorney's fees associated with the filing of this motion . . . incurred as a result of improper removal." *Id.* at 10.

## THE LAW

A federal court should remand to state court any case that has been improperly removed. *See* 28 U.S.C. § 1447(c). The party attempting to invoke the federal court's jurisdiction bears the burden of establishing that jurisdiction. *See McNutt v. Gen. Motors Acceptance Corp. of Ind., Inc.*, 298 U.S. 178, 189 (1936). "Not only does the language of the Act of 1887 evidence the Congressional purpose to restrict

the jurisdiction of the federal courts on removal, but the policy of the successive acts of Congress regulating the jurisdiction of federal courts is one calling for the strict construction of such legislation." *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941). Indeed, "[d]ue regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined." *Healy v. Ratta*, 292 U.S. 263, 270 (1934).

Congress has authorized the federal district courts to exercise original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]" 28 U.S.C. § 1332(a). This type of jurisdiction (what we call diversity jurisdiction) requires *complete* diversity: Every plaintiff must be diverse from every defendant. *See Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) (citing *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1355 (11th Cir. 1996)). The party invoking diversity jurisdiction must establish that the amount in controversy exceeds $75,000. *See* § 1332(a). "A court's analysis of the amount-in-controversy requirement focuses on how much is in controversy at the time of removal, not later." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751 (11th Cir. 2010).

## ANALYSIS

### I.     The Amount in Controversy

In their Motion to Remand, the Plaintiffs advance just one argument: that the "Defendant has failed to satisfy its burden of establishing [that] the amount in controversy in this case exceeds $75,000." Motion to Remand at 10. The Plaintiffs concede that, "upon first blush," the sum of their "rebuild estimate," "invoice for mold testing," "invoice for mold remediation," "invoice for water mitigation," and "supplemental invoice for mold remediation . . . is over the jurisdictional threshold of $75,000 as the estimate of damages and the invoices noted above total $106,462.02." *Id.* at 2. "However," the Plaintiffs argue, "the deductible under the applicable policy of insurance is $30,000,"

3

and, "[w]hen the deductible is applied, the amount in controversy based on the estimate and invoices totals $76,462.02." *Id.* at 3.[2] Plus, the Plaintiffs say, "the United Mold invoice of $1,650.00 should be subtracted from the $76,462.02" because "the invoice from United Mold Inspections, Inc. (United Mold) is an invalid Assignment of Benefits of which Defendant would have no obligation to pay pursuant to the insurance policy." *Ibid.* In the Plaintiffs' view, then, "the total in dispute [is] $74,812.00."[3] *Ibid.* We disagree.

As we've said many times, "the well-trodden rule is that, in a removed case, jurisdiction must be determined at the time of removal, not later." *Folkman v. GeoVera Specialty Ins. Co.*, 2021 WL 7630485, at *4 (S.D. Fla. Sept. 14, 2021) (Altman, J.) (cleaned up). Because our "jurisdiction is evaluated based on the circumstances at the time of removal, . . . . the pertinent jurisdictional question 'is what is *in controversy* in the case, not how much the plaintiffs are ultimately likely to recover.'" *Amie Chapel Missionary Baptist Church v. First Nat'l Ins. Co. of Am.*, 2022 WL 2236026, at *3 (M.D. Fla. June 22, 2023) (Honeywell, J.) (quoting *Pretka*, 608 F.3d at 751 (emphasis in original)). As relevant here, "courts determining whether they have subject-matter jurisdiction have declined to speculate about possible reductions to a plaintiff's award that may occur in the future." *Ibid.* Applying this principle, the court in *Amie Chapel* refused to subtract a deductible from the amount in controversy:

> Nor is this Court's subject-matter jurisdiction destroyed by the existence of a deductible in the policy at issue . . . . Even if the amount [the Plaintiff] Amie Chapel ultimately receives from [the Defendant] First National, if successful, is reduced by a

---

[2] *See also* Motion to Remand at 3 n.1:

> The subject policy of insurance insures six (6) buildings. The building at issue in this lawsuit is identified as Building 1/ Zookeeper's Quarters under the policy and has a Coverage A limit of insurance totaling $600,000. Pursuant to the policy of insurance, the deductible for losses caused by wind or hail is 5% of Coverage Limits, which totals a $30,000 deductible.

[3] The Plaintiffs add that, "[o]n November 1, 2023, prior to filing suit, [they] filed their Notice of Intent to Litigate pursuant to § 627.70152 Florida Statutes," demanding "$74,447.00 from Defendant to resolve the claim." Motion to Remand at 3; *see also* Notice of Intent [ECF No. 14-4] at 2.

4

> deductible, this reduction is irrelevant to the question of whether the amount in controversy was satisfied at the time of removal. *See Pretka*, 608 F.3d at 751; [*Dickerson v. Barancik*, 2018 WL 1117692 at *3–4 (M.D. Fla. 2018) (Honeywell, J.)]. The amount that Amie Chapel is seeking has not yet been offset by a collateral source payment or the application of a deductible. Rather, Amie Chapel has informed First National that it is seeking the cost of repairing the property damage it sustained, which is $76, 864.55. First National has therefore proven by a preponderance of the evidence that the amount in controversy exceeds $75,000.1 The Court will deny Amie Chapel's Motion to Remand.

*Ibid.*

As in *Amie Chapel*—and for two reasons—we refuse to include the deductible on the Plaintiffs' policy in our amount-in-controversy computation.

*First*, we're not at all sure that the deductible will even apply here. While the Plaintiffs claim that it "would defy logic to permit Defendant to ignore the application of the policy deductible," Motion to Remand at 5, Scottsdale insists that the deductible *doesn't* govern the Plaintiffs' claims because the damages the Plaintiffs sustained "are not covered or are excluded by the policy," Response at 6. Scottsdale adds that "a policy's deductible applies only to a covered loss . . . . Scottsdale denied coverage for this claim and has not paid Plaintiffs anything for the claim because the policy bars coverage and excludes the claimed damages . . . . Thus, Scottsdale could not have applied a deductible to the claim because the claim is not covered." *Id.* at 6–7. It's not our job, in calculating the amount in controversy, to engage in "speculation or unabashed guesswork." *Beckler v. Zachary Confections, Inc.*, 2024 WL 1050091, at *1 (M.D. Ga. Mar. 11, 2024). And, at this early stage of the case, we don't know whether the Plaintiffs suffered a covered loss—so we cannot say that the deductible would ever apply. *See Pretka*, 608 F.3d at 753–54 ("[W]ithout facts or specific allegations, the amount in controversy could be 'divined [only] by looking at the stars'—only through speculation—and that is impermissible.").

*Second*, and relatedly, courts in our Circuit have consistently held that "any set-off to which [a] [d]efendant may be entitled is irrelevant at the jurisdictional stage, as the [c]ourt must look at the

5

amount in controversy at the time of removal." *Black v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 4340281, at *2 (S.D. Fla. Oct. 22, 2010) (Cohn, J.); *see also Stramiello v. Petsmart, Inc.*, 2010 WL 2136550, at *4 (M.D. Fla. May 26, 2010) (Covington, J.) ("It is well settled that a plaintiff cannot defeat subject matter jurisdiction by reducing his or her claim after removal has taken place."); *Zambrano v. Wal-Mart Stores E., LP*, 2023 WL 7189466, at *1 (M.D. Fla. Nov. 1, 2023) (Chappell, J.) (denying motion to remand on the ground that "[t]he [c]ourt need not look much past the settled principle that a plaintiff cannot defeat subject matter jurisdiction by reducing her claim after removal or expecting a future reduction in recoverable damages").

And that makes sense. As the Eleventh Circuit reiterated in *Pretka*, "[t]he amount in controversy is not proof of the amount the plaintiff will recover," but rather "an estimate of the amount that will be put at issue in the course of the litigation." 608 F.3d at 751 (quoting *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008)). In other words, we determine the amount in controversy by adding up the damages the plaintiff is seeking—without reducing that amount by the value of any defenses, reductions, or counterarguments the defendant might deploy in opposition. In this case, the Plaintiffs concede that they've put $106,462.02 at issue through their damages estimates and invoices. Motion to Remand at 2. We won't now subtract $30,000 from this sum just because the Plaintiffs believe that a deductible might one day apply.[4]

---

[4] We reject the Plaintiffs' argument about the United Mold invoice for the same reason. The Plaintiffs (recall) ask us to subtract the $1,650 invoice (an invoice they themselves submitted to the Defendant) from the amount-in-controversy computation because "the invoice is based upon an invalid assignment of benefits, [and] the Defendant would not be obligated to pay[.]" Motion to Remand at 6. Whether Scottsdale is ultimately liable on the merits, though, is irrelevant for purposes of the amount-in-controversy calculus. As the Defendant correctly notes: "If the United Mold Inspections assignment were invalid, Scottsdale may not be liable to pay United Mold Inspections directly, but Plaintiffs could still try to seek payment from Scottsdale for the invoice . . . . [But] [w]hether the assignment of benefits between United Mold Inspections and Plaintiffs is invalid has no bearing on the amount in controversy[.]" Response at 7.

We recognize that several of our district court colleagues have come out the other way on this issue. *See, e.g.*, *Bradbury v. First Liberty Ins. Corp.*, 2018 WL 8224780, at *2 (M.D. Fla. Nov. 1, 2018) (Conway, J.) ("In calculating the amount in controversy, courts have reduced repair estimates and claims by the deductible."); *Murphy v. First Liberty Ins. Co.*, 2020 WL 998719, at *2 (M.D. Fla. Mar. 2, 2020) (Barber, J.) ("The amount in controversy in this case is calculated by subtracting the deductible from the total purported damages.").[5] Respectfully, we disagree with these decisions. As we've indicated, we think the better view is the one Judge Honeywell espoused in *Amie Chapel*. Adopting that approach here, we think the Defendant has shown that the amount in controversy *at the time of removal* exceeds $75,000. *See* Notice of Removal at 2.

Accordingly, we hereby **ORDER and ADJUDGE** that the Plaintiffs' Motion to Remand [ECF No. 14] is **DENIED**. And, because we've denied the Plaintiffs' Motion to Remand on the merits, their request for attorneys' fees is also **DENIED**.

**DONE AND ORDERED** in the Southern District of Florida on March 25, 2024.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

---

[5] In at least some of these cases, the parties *agreed* that the deductible applied. *See, e.g.*, *Marambio v. Scottsdale Ins. Co.*, 2020 WL 2393119, at *4 (S.D. Fla. May 12, 2020) (Bloom, J.) ("The parties appear to agree that the damages estimate of $149,150.51 is the base figure from which the deductible of $42,000.00 and prior tendered payments of $33,943.53 may be subtracted."); *Bittorf v. Lexington Ins. Co.*, 2018 WL 2976734, at *3 (M.D. Fla. May 24, 2018) (Smith, Mag. J.), *report and recommendation adopted*, 2018 WL 2970923 (M.D. Fla. June 13, 2018) (Dalton, J.) (reducing the deductible from the amount in controversy "because the parties agree that [the amount of the deductible applicable to the [p]laintiffs' gross claim] is the correct amount and because there is no evidence that [p]laintiffs have ever disputed [d]efendant's pre-suit calculation").